# NO. 12-17-00180-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAVID T. PRICE M.D., IND., DAVID T. PRICE, M.D., P.A., D/B/A EAST TEXAS UROLOGY SPECIALISTS; PINEY WOODS HEALTHCARE SYSTEM, L.P., D/B/A WOODLAND HEIGHTS MEDICAL CENTER, AND CHI ST. LUKE'S HEALTH MEMORIAL LUFKIN, F/K/A MEMORIAL HEALTH SYSTEM OF EAST TEXAS, APPELLANTS* | *§* | *APPEAL FROM THE 217TH* |
| | *§* | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *W. COOPER BUSCHEMEYER, III, INDIVIDUALLY AND W. COOPER BUSCHEMEYER, III, M.D., P.A., APPELLEES* | *§* | *ANGELINA COUNTY, TEXAS* |

*MEMORANDUM OPINION*

David T. Price M.D., Individually, David T. Price, M.D., P.A., d/b/a East Texas Urology Specialists (Price), Piney Woods Healthcare System, L.P., d/b/a Woodland Heights Medical Center (Woodland Heights), and CHI St. Luke's Health Memorial Lufkin, f/k/a Memorial Health System of East Texas (Memorial) appeal the trial court's denial of their motions to dismiss a lawsuit filed against them by W. Cooper Buschemeyer, III, Individually and W. Cooper Buschemeyer, III, M.D., P.A (referred to together as Buschemeyer). In two issues, Price, Woodland Heights, and Memorial (Appellants) contend that the Texas Citizens Participation Act (TCPA) applies to this suit, and that Buschemeyer failed to meet his burden to establish a prima facie case on each element of his claims. Appellants also request that we remand the case for a

determination of attorney's fees and costs. We affirm in part, reverse and render in part, and reverse and remand in part.

## BACKGROUND

Buschemeyer alleges that in 2012, Price, a Lufkin-area urologist, recruited him to relocate from Kentucky so that they could practice together in Lufkin, Texas.[1] They shared office space, staff, overhead, and call duties at local hospitals such as Memorial and Woodland Heights. In 2013, the relationship soured, and Buschemeyer ceased sharing office space with Price. Nevertheless, Price, Buschemeyer, and another Lufkin urologist (Dr. Brent Campbell) were part of a urology "call group" from 2013 through 2015. The purpose of the call group is to establish a call list rotation schedule by which the urologists provide emergency urological care at all times for Woodland Heights and Memorial. According to Buschemeyer, during this time, Price acted abusively toward him, ultimately negotiating with Memorial and Woodland Heights to remove him from the call list in early 2016.

Buschemeyer later filed suit, alleging that Price acted wrongfully to omit him from Memorial and Woodland Height's 2016 urology call list, and that the hospitals wrongfully allowed him to be removed from the list. Buschemeyer also alleges that as a result of his removal from the list, the hospitals' staff failed to notify him at the request of his patients at those hospitals. Buschemeyer contends that his removal from the call list devastated his practice, resulting in damages, and ultimately, the cessation of his practice in Lufkin.

Appellants filed motions to dismiss under the TCPA, contending that Buschemeyer's claims are governed by the TCPA and that he failed to carry his burden under the Act.[2] The trial court overruled Appellants' motions to dismiss, finding that the TCPA did not apply to Buschemeyer's claims, and that in any event, Buschemeyer satisfied his burden to present clear

---

[1] At this early stage of the litigation, the parties disagree on many of the facts, and they have not had significant discovery. As we discuss below, an analysis under the TCPA depends largely on Buschemeyer's allegations in his petition and supporting affidavits. Consequently, we focus on his version of the facts in describing the events leading to this lawsuit.

[2] In his first amended petition, Buschemeyer alleged several causes of action, including claims for defamation, business disparagement, and civil conspiracy. Shortly before the hearing on Appellants' motions to dismiss, Buschemeyer amended his petition and omitted those three claims.

and specific evidence of a prima facie case on each essential element of his causes of action. This appeal followed.[3]

<u>**APPLICABILITY OF THE TCPA**</u>

In Appellants' first issue, they contend that the trial court erred in concluding that the TCPA does not apply to Buschemeyer's claims against them.

<u>**Standard of Review and Applicable Law**</u>

The TCPA provides a mechanism for early dismissal of a cause of action that "is based on, relates to, or is in response to a party's exercise of the right of free speech, the right to petition, or right of association . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003 (West 2015). The party moving for dismissal has the initial burden to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of" the right of free speech, the right to petition, or the right of association. *Id.* § 27.005(b) (West 2015). If the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). When determining whether to dismiss the legal action, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a) (West 2015).

The TCPA defines "exercise of the right of free speech" as a communication made in connection with a matter of public concern. *Id*. § 27.001(3) (West 2015). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). A "communication" is defined to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The TCPA does not discriminate between public and private communications as long as they are made in connection with a matter of public concern. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). The TCPA statutory analysis is not dictated by traditional First Amendment constitutional limitations. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam). Rather, we must apply the plain meaning of the TCPA as written, absent an ambiguity. *See id.* (holding

---

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(b) (West 2015).

3

court of appeals erred when it failed to apply the plain meaning of the statute by adding requirements not contained in TCPA).

We review questions of statutory construction de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered by the TCPA. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.). When analyzing whether the TCPA applies to the plaintiff's legal action, we view the pleadings and evidence in the light most favorable to the nonmovant. *See Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214–15 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## Discussion

Appellants contend that Buschemeyer's claims are based on, relate to, or are in response to their exercise of the right of free speech and the right of association. Buschemeyer responds that Appellants analyze the issue under the incorrect standard of review. He also argues that Appellants fail to consider evidence that favors him, fail to identify communications made by the hospitals, fail to show that any communications were made in connection with a matter of public concern, and ignore the right of association's limitation to "individuals."

Under the TCPA, a defendant moving for dismissal need show only that the plaintiff's legal action is based on, relates to, or is in response to the defendant's exercise of the right of free speech as defined by the TCPA, that is, "a communication made in connection with a matter of public concern." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). The defendant need not show that the communication actually occurred. *Id.* The allegations in the plaintiff's pleadings and supporting affidavits determine the basis of the legal action, and not the defendants' admissions or denials. *See id.* When it is clear from the plaintiff's pleadings and supporting affidavits that the suit is covered by the TCPA, the defendants need show no more. *See id.*

Buschemeyer alleges in his petition that Price tortiously interfered with his current and future contracts with the hospitals by having him removed from the call group, and that Price also tortiously interfered with the new patients that would have naturally flowed from his participation in the call group. Buschemeyer averred that Woodland Heights and Memorial allowed him to be removed from the call group without cause, and consequently, that they violated his right to due process under each respective hospital's applicable bylaws, rules, and regulations. He also alleged that Woodland Heights breached its contract with him by allowing his removal from the

4

list.    Finally, Buschemeyer alleges that Memorial and Woodland Heights failed to contact him when his existing patients presented to the hospitals and requested that he be contacted.  Similarly, he alleged that Memorial and Woodland Heights failed to contact him at the request of other medical doctors to treat their patients, and that prior to the incident forming the basis of this suit— his removal from the call group—they did not interfere with his relationships with existing patients or the patients of other doctors.  Buschemeyer stated in his affidavit that

> Price met with the two Lufkin hospitals and negotiated the 2016 call reimbursement pay for the call group and call schedule.  This was done without my knowledge. Price specifically negotiated to not have me in the hospital call schedule to punish me.  Price used his position as Chief of Surgery at Memorial Hospital in Lufkin to have me removed from the call group.   Price knew I was professionally and financially vulnerable if I was removed from the call group.

> I discovered after calling the two Lufkin hospitals to find out the 2016 call schedule for Urology (dictated by Dr. Price) that I was not on the call schedule for either Lufkin hospital.  I first made the enquiry to Memorial Hospital and was told I would have to talk to Dr. Price.  Dr. Price's office did not return my call.  I spoke with Woodland Heights who told me I was not on the call schedule any longer and had been replaced with Dr. Shawn Todd.

The central basis for all of these claims is Buschemeyer's removal from the call group list and schedule.  Consequently, Buschemeyer's "legal action," which includes all of the claims alleged in his petition, is based on, relates to, or is in response to "communications" made by Appellants.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (defining "legal action" in pertinent part as lawsuits, petitions, complaints, and causes of action requesting legal or equitable relief).

Specifically, Buschemeyer alleges in his petition and affidavit that Price made statements to Memorial and Woodland Heights that resulted in his removal from the call group.  Moreover, he alleges in his affidavit that his removal from the group resulted from "negotiations" between Price and the hospital defendants.  "Negotiate" means "to communicate with another party for the purpose of reaching an understanding."  *Negotiate*, BLACK'S LAW DICTIONARY (10th ed. 2014).  A negotiation necessarily contemplates oral, written, or electronic statements between the parties, including not only Price individually and on behalf of his professional association, but also the hospital defendants.  Buschemeyer also alleged in his affidavit that he initially called the hospitals in January 2016 to determine his schedule for providing services as part of the call group, and their agents made oral statements to him that he was no longer on the call schedule.  Additionally, the call group list and schedule itself is a written statement, and his removal from it forms the

5

basis of the suit.[4]  Lastly, Buschemeyer claimed that the hospitals failed to contact him when requested by his patients or other doctors regarding the treatment of their patients.  As we have stated, he alleged in his pleading that the hospital defendants did not engage in this behavior prior to the incident forming the basis of this suit—his removal from the call group.  Consequently, Buschemeyer's claims are all based on, relate to, or are in response to Appellants' communications.

Moreover, Appellants' communications were made in connection with matters of public concern.  "The TCPA does not require that the statements specifically mention health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same." *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900.  "[R]ather, TCPA applicability requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, . . . and other identified matters of public concern chosen by the Legislature." *Id.*  The purpose of the call group is to ensure that patients have access to urological medical services in the emergency department of Lufkin area hospitals at all times.  The composition of the call group list and schedule form the basis of the suit, which relates to matters of public concern, namely matters pertaining to health, safety, and community well-being.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A), (B).  Consequently, the communications resulting in Buschemeyer's removal from the call group were made in connection with matters of public concern.  *See Lippincott*, 462 S.W.3d at 510 (holding that allegations in emails concerning nurse anesthetist's competence in providing medical services were matters of public concern); *Mem'l Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *5-6 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op. on reh'g).

Accordingly, we hold that the trial court erred when it concluded that the TCPA does not apply to Buschemeyer's claims against Appellants.  Because we hold that the communications were made in the exercise of the right of free speech under the TCPA, we need not determine whether they also implicate the exercise of the right of association.  *See* TEX. R. APP. P. 47.1; *ExxonMobil Pipeline Co.*, 512 S.W.3d at 901–02.

Appellants' first issue is sustained.

---

[4] We note that the hospital defendants denied actually creating the call schedule.  However, whether the TCPA applies turns not on the statements or admissions of the defendant, but on the allegations in the plaintiff's petition and the supporting affidavits.  Moreover, a defendant can rely on the communication to implicate the TCPA, but also deny making it.  *See Hersh*, 526 S.W.3d at 467.  The communication can be made privately and still trigger the TCPA.  *Lippincott*, 462 S.W.3d at 509.

In their second issue, Appellants argue that the trial court erred when it concluded that Buschemeyer satisfied his burden to prove, by clear and specific evidence, a prima facie case of each essential element of his claims as required by the TCPA.

**Standard of Review and Applicable Law**

Once the movant establishes that the TCPA applies to the plaintiff's claims, the second step shifts the burden to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of his claims. *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c)). The Texas Supreme Court has explained the meaning of the requirement that the nonmovant establish by "clear and specific evidence a prima facie case." *Id.* at 590-91. "Clear" means "unambiguous, sure or free from doubt," and "specific" means "explicit or relating to a particular named thing." *Id.* at 590. A "prima facie case" is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id.* The "clear and specific evidence" requirement does not impose an elevated evidentiary standard, nor does it categorically reject circumstantial evidence. *Id.* at 591. But it requires more than mere notice pleading. *Id.* at 590-91. Instead, a plaintiff must provide enough detail to show the factual basis for his claim. *Id.* at 590.

We review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case of each essential element of the challenged claims. *Id.* We consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.—Dallas 2015, no pet.).

**Evidentiary Analytical Framework**

Much of Appellants' briefs focus on evidence they produced in opposition to Buschemeyer's evidence, in an attempt to disprove the allegations in his petition and supporting affidavits. Texas courts have differed in their standards when evaluating the evidence in the second step of the TCPA analysis. For instance, some courts have held that the reviewing court should consider only the pleadings and evidence in favor of the nonmovant's case. *See, e.g., Fawcett v. Grosu*, 498 S.W.3d 650, 661 (Tex. App.—Houston [14th Dist.] 2016, pet.

denied); ***D Magazine Partners, L.P. v. Rosenthal***, 475 S.W.3d 470, 480-81 (Tex. App.—Dallas 2015) ("We do not consider whether the defendant presented evidence rebutting the plaintiff's case. . . ."), *aff'd in part on other grounds, rev'd in part on other grounds,* 529 S.W.3d 429 (Tex. 2017). Other courts have reviewed all of the evidence in the light most favorable to the nonmovant, allowing the movant to rebut the prima facie case when the true facts are conclusively shown by other evidence. *See, e.g.,* ***Warner Bros. Entm't, Inc. v. Jones***, No. 03-16-00009-CV, 2017 WL 6757187, at \*6 (Tex. App.—Austin Dec. 21, 2017, pet. filed) (op.).

Even applying the latter standard, Appellants' evidence is not conclusive in most respects, and their evidence would merely create a fact issue at this stage of the litigation. Texas courts have held the trial court's role is not to act as a factfinder and to resolve opposing reasonable inferences in determining whether the plaintiff satisfies the prima facie proof requirement.[5] *See* ***Dallas Morning News, Inc. v. Hall***, 524 S.W.3d 369, 378 (Tex. App.—Fort Worth 2017, pet. filed). Instead, the court determines whether the nonmovant met his burden to produce evidence sufficient to present a prima facie case as required by the TCPA, some of which may include relevant evidence from which more than one reasonable inference may be drawn. *See **id.***

For example, Appellants contend that Memorial presented Buschemeyer with an offer to renew his annual contract for the call group in 2016, but he rejected it. Accordingly, without a contract, their argument continues, they negated Buschemeyer's tortious interference and due process claims. Buschemeyer disagrees and contends that this form was an agreement between physicians to cover each other's practices, which is a separate agreement from the call group contract with the hospitals. He also contends that he desired to remain part of the call group, that he never told anyone he wanted to depart from the group, and that he specifically told all of the doctors he desired to remain part of the call group. Consequently, unless otherwise noted below, we focus our analysis on the evidence supporting Buschemeyer's claims to determine whether he satisfied his burden under the TCPA. *See **id.***

**Tortious Interference – Price**

The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. ***Prudential Ins.***

---

[5] Appellants do not argue that they established by a preponderance of the evidence each essential element of a defense to Buschemeyer's claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). Rather, they proffer evidence to negate the elements of Buschemeyer's claims.

*Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The classic proximate cause test applies to tortious interference cases—cause in fact and foreseeability. *See Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 126 (Tex. App.—El Paso 1997, pet. denied). Considering cause in fact, the defendants' acts or omissions must have been a "substantial factor" in bringing about the injury. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 194 (Tex. App.—Fort Worth 2017, pet. filed) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)). "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his act created for others. *Portlock v. Perry*, 852 S.W.2d 578, 583 (Tex. App.—Dallas 1993, writ denied) (en banc). In other words, proximate cause is that cause, unbroken by any new and independent cause, that produces injury and without which the injury would not have occurred. *See id.*; *see also Hill*, 964 S.W.2d at 126.

Buschemeyer alleged that he had specific contracts with Woodland Heights and Memorial. Shawn Barnett, a Memorial employee, acknowledged in his affidavit that Memorial had a contractual relationship with Buschemeyer, and that it renewed the contract annually from 2013 through 2015. Buschemeyer attached his 2015 contract with Memorial to his response to Appellants' motions to dismiss. Buschemeyer also alleged that he had a three year contract with Woodland Heights that expired in August 2016. He attached a contract to his response to the motion, explaining in his affidavit that he did not possess the original copy that he signed. Although this contract identifies Dr. Price as the contracting physician, Buschemeyer explained that this contract is the same as the contract he signed. In any event, there is no dispute that he had a contractual relationship with Woodland Heights, that he had privileges at Woodland Heights, and that he was part of the call group there until January 2016. Among other terms, both contracts establish the call group, describe the responsibilities of the provider physicians, establish daily pay rates for services provided by the physicians, and outline termination procedures in the event of breach. Under these facts at this stage of the proceeding, Buschemeyer satisfied his burden to establish a prima facie case of existing contracts subject to interference. *See Deuell v. Texas Right to Life Comm., Inc.*, 508 S.W.3d 679, 686 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding plaintiff satisfied TCPA second step burden to show existence of contract for purposes of tortious interference claim, because he offered evidence that parties treated contract as effective, even though he did not attach actual contract to response to motion to dismiss).

9

According to Buschemeyer's affidavit, after their relationship soured, Price threatened on several occasions that he could make "call pay go away," that he was "going to get [Buschemeyer] kicked off of the call rotation," and that he "would lose a lot of income." He also alleged that Price did this intentionally, because he knew that Buschemeyer's removal from the call group would devastate his professional standing in the medical community and his business revenue. Buschemeyer stated that while both contracts were effective in late 2015, Price negotiated with Memorial and Woodland Heights to remove Buschemeyer from the call group. He explained that he was in fact removed from the call group, and that he learned this when he called both hospitals to ascertain the January 2016 call schedule. He was dismissed from both call groups at the same time, which was shortly after Buschemeyer alleges Price negotiated with the hospitals to have him removed from the call group. This raises a rational inference that Price willfully and intentionally interfered with Buschemeyer's contractual relationships with Memorial and Woodland Heights. As we have stated, the parties disagree as to the reason why Buschemeyer was removed from the group, but that is a fact issue for future proceedings. Buschemeyer contended in his affidavit that his removal from the list ultimately caused him to close his practice and relocate, due to the lost revenue sources the call group provided.[6]

As part of his tortious interference claim, Buschemeyer alleges that Price's interference extended not only to his existing contracts, but to his foreseeable future contracts and continued relationships with Memorial and Woodland Heights after the expiration of his contract with each hospital.[7] To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party, (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct, (3) the defendant's conduct was independently tortious or unlawful, (4) the interference proximately caused the plaintiff injury, and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The types of business relationships

_____

[6] We address Buschemeyer's alleged damages for all of his causes of action in its own section later in this opinion.

[7] Buschemeyer also claims that Price's conduct resulted in the loss of future patients with whom he would have formed relationships as part of his medical practice had he remained in the call group. We believe this is not a separate claim, but one of the consequential damages that his removal from the group caused, which we discuss later in the damages section of this opinion.

10

protected against interference include continuing business relationships. *See Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 633 (Tex. App.—Fort Worth 2007, pet. denied).

Memorial recited in the agreement that the parties understood that there are not enough urologists currently located within the market area, and consequently that the parties contemplated recruiting more urologists to meet community needs for the next five to ten years. Memorial renewed the one year agreement with Buschemeyer every year in the years preceding the events giving rise to this lawsuit as part of a continuing business relationship. Buschemeyer was removed from the Woodland Heights call group during the contract period in January 2016. The contract term was not set to expire until August 2016. There was no evidence or allegation that Buschemeyer's performance faltered or that the hospitals' requirements had changed. Considering that (1) the Lufkin area had such a short supply of qualified urologists, (2) Buschemeyer's contract with Memorial had been renewed annually for several years without indications of decreasing performance, and (3) he had a continuing contract with Woodland Heights, but (4) he was dismissed from both hospitals' call groups at the same time shortly after the alleged interference, we hold that Buschemeyer met the prima facie case requirement to show a reasonable probability that his business relationships with both hospitals would have continued and that the contracts would have been renewed if not for Price's interference.

A plaintiff must also prove that the defendant's conduct was independently tortious or wrongful. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

> By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort. Thus, for example, a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third person without proving that the third person was actually defrauded.

*Id.* Buschemeyer alleges that as part of Price's negotiation with the hospitals to remove him from the call groups, Price made fraudulent statements to the hospitals that Buschemeyer no longer wished to be part of the call group. The circumstances and timing of his dismissal from the call groups could support a rational inference that Price breached this independent tort duty. Finally, as we explained above, Price's alleged statements to Buschemeyer that he would have him removed from the call rotation and that he would lose a lot of money satisfy the requirement that Price either acted with a conscious desire to prevent the relationship from occurring or knew the

11

interference was certain or substantially certain to occur as a result of the conduct. Buschemeyer was in fact removed from the call group, and as we discuss below, suffered harm as a result.

Therefore, the trial court correctly held that Buschemeyer satisfied his burden under the TCPA as to all of his tortious interference claims against Price. *See* TEX. CIV. PRAC. & REM. CODE ANN. 27.005(c).

**Intentional Infliction of Emotional Distress – Price**

Buschemeyer contends that Price's conduct was so extreme and outrageous, that it caused him to suffer severe emotional distress, including a loss of sleep, appetite, bodyweight, and that he had headaches. He also alleged that he suffered anguish about how he would financially support his family and pay bills, that he lost faith in himself, suffered from marital discord, was humiliated, embarrassed as a medical professional, and that he suffered extreme anxiety. Consequently, he asserted a cause of action for intentional infliction of emotional distress (IIED).

IIED is a gap-filler tort that has no application when the conduct at issue invades some other legally protected interest. *See Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (stating that "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available" and citing with approval three defamation cases in which IIED was not available as an independent claim). To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Id.* at 445. Whether a defendant's conduct is "extreme and outrageous" is a question of law. *Wornick Co. v. Case*, 856 S.W.2d 732, 734 (Tex. 1993); *Gaspard v. Beadle*, 36 S.W.3d 229, 237 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

Extreme and outrageous conduct is conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). "Meritorious claims for [IIED] are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).

12

Generally, "insensitive or even rude" behavior does not constitute extreme and outrageous conduct. *GTE Sw. Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). Similarly, liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Further, it is not enough that the defendant acted with an intent that is tortious, malicious, or even criminal, or that he intended to inflict emotional distress. *Id.* at 616. Although the defendant's intent is relevant, the conduct itself must be extreme and outrageous to support liability. *Id.* The supreme court has declined to recognize IIED claims for "ordinary employment disputes," emphasizing that extreme conduct in this context "exists only in the most unusual of circumstances." *Id.* at 612–13. "A threat to fire someone and ruin their career falls within the type of ordinary business dispute that is not actionable as a claim for intentional infliction of emotional distress." *Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 609 (Tex. App.—Beaumont 2008, pet. denied). Unprofessional threats in an ordinary, albeit contentious, commercial contract dispute do not ordinarily rise to the level of extreme and outrageous conduct. *Tiller v. McLure*, 121 S.W.3d 709, 714 (Tex. 2003).

Buschemeyer initially raised defamation, business disparagement, and civil conspiracy claims against Appellants in a prior pleading, but shortly before the hearing on Appellants' motions to dismiss, he amended his petition and omitted those claims. In the prior petition, Buschemeyer alleged that Appellants acted together to destroy his reputation, business interest, and ability to practice medicine. Buschemeyer also alleged that Price used his position at the hospitals to remove Buschemeyer from the call group, and that the hospital defendants willingly participated in this scheme to harm him.

A defamation claim may support the recovery of mental anguish damages. *See Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013). Civil conspiracy is generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding). Civil conspiracy is a derivative tort because "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Id.* Defamation is such an underlying tort. *See Jones*, 2017 WL 6757187, at *16-17 (holding that civil conspiracy is derivative tort to defamation-type claims).

Because IIED is a gap-filler tort and mental anguish damages are recoverable for defamation and civil conspiracy, Buschemeyer could not simply amend his pleading to omit those

claims and subsequently seek mental anguish damages for IIED, especially since they are based on the same conduct as Appellants' defamation claims and conspiracy claims against Appellees. *See Zeltwanger*, 144 S.W.3d at 447 (citing three defamation cases with approval holding that IIED not available); *Jones*, 2017 WL 6757187, at *16-17 (holding in TCPA case that civil conspiracy and defamation claims authorized mental anguish damages, and consequently did not support IIED claim). Moreover, this is not one of those extremely rare cases where Price's alleged conduct is so extreme and outrageous to support an IIED claim. *See GTE Sw. Inc.*, 998 S.W.2d at 612. Instead, Price's alleged insults and threats to remove Buschemeyer from the call group and ruin his practice are part of an ordinary, albeit contentious, business dispute, and are insufficient to support an IIED claim. *See id.*; *Tiller*, 121 S.W.3d at 714; *Louis*, 254 S.W.3d at 609. We hold that the trial court erred by not dismissing this claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

## Violation of Due Process – Memorial and Woodland Heights

In support of his due process claims against Memorial and Woodland Heights, Buschemeyer pleaded as follows:

> There were valid and enforceable bylaws, rules and regulations between Plaintiffs, Defendant Memorial and Defendant Woodland Heights regarding Plaintiffs and the ER call group for doctors covering medical care at the hospitals owned and operated by Defendant Memorial and Defendant Woodland Heights. Defendant Memorial and Defendant Woodland Heights denied Plaintiffs due process under the applicable bylaws, rules and regulations. The denial of due process by Defendant Memorial and Defendant Woodland Heights caused Plaintiffs' damages.

In his response to the motion to dismiss, Buschemeyer argued that this is a constitutional due process claim, alleging that the hospital defendants publicized the communications leading to his discharge from the call group, that he was denied a meaningful hearing to clear his name, and that he should be compensated for the stigma resulting from his removal from the call group. He cited his own affidavit and the affidavit of Dr. John Dunn. In his supporting affidavit, Buschemeyer alleged that

> There were valid and enforceable bylaws, rules and regulations between me and the two Lufkin hospitals regarding my professional privileges at the two Lufkin hospitals. See Exhibits 3 (Memorial) & 4 (Woodland Heights) attached hereto. I was removed from the call group for the two Lufkin hospitals without any of the protections and due process I was entitled to under the applicable bylaws, rules and regulations. For example, see Exhibit 3 (Article 7 regarding Correction Action) & Exhibit 4 (Articles 8 & 9 regarding Corrective Action, Interviews and Hearings). Employees, staff, doctors and administrators for the two Lufkin hospitals were informed

14

that I was removed from the call group. It was extremely embarrassing each time one of these individuals would ask me about why I was removed from the call group.

Exhibit 3 is Memorial's bylaws, rules, and regulations, and Article 7 relates to investigations for physician misconduct. Exhibit 4 is Woodland Heights' bylaws, rules, and regulations, and Articles 8 and 9 relate to investigations for physician misconduct and disciplinary procedures. Dr. Dunn explained generally in his affidavit that "operating room schedules that are discriminatory would be in violation of the bylaws." However, neither he nor Buschemeyer provide any further detail or specify in their affidavits which provisions were violated or explain how the violations harmed him. Buschemeyer also does not show that Memorial or Woodland Heights are state actors, as is required for such a constitutional due process claim. *See Cole v. Huntsville Mem'l Hosp.*, 920 S.W.2d 364, 369-71 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (holding that private hospital's decision to revoke doctor's privileges under bylaws is not state action required to support due process claim), *overruled in part on other grounds*, *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004).

Finally, Buschemeyer failed to support his due process claims in his appellate brief. We hold that Buschemeyer failed to provide enough detail to show a factual basis for these claims. Accordingly, the trial court erred when it failed to dismiss Buschemeyer's due process claims against Memorial and Woodland Heights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)-(c).

### Breach of Contract – Woodland Heights

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance, (3) breach of the contract, and (4) damage as a result of the breach. *See Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied). A breach of contract occurs when a party to the contract fails or refuses to do something that it promised to do. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A breach is determined by comparing the terms of a contract with the actions of the alleged breaching party. *Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 221 (Tex. App.—Tyler 2003, no pet.). Buschemeyer stated in his affidavit as follows:

> In January 2016, when I was removed from the call group for the two Lufkin hospitals, I had a valid and enforceable contract with Woodland Heights regarding my medical services and compensation for being a part of the call group until August 2016. See Exhibit 1 attached hereto. I do not have the original copy I signed with Woodland Heights, so I am attaching a copy that I received prior to my

15

signature. Woodland Heights breached the contract by not allowing me to participate in the call group for Woodland Heights and failing to comply with the provisions in the contract regarding my removal and termination of the contract. For example, see Exhibit 1 (Section I regarding Removal of Provider Personnel and Section III regarding Termination of the Agreement).

Exhibit 1 is identified as Price's contract with Woodland Heights. However, as explained by Buschemeyer, he does not possess the actual contract that he signed. But there is no dispute that Buschemeyer had privileges at Woodland Heights and that he had a contractual relationship with the hospital as part of the call group there until January 2016. According to Buschemeyer, the term of the contract extended until August 2016, which is consistent with the attached Exhibit 1. Moreover, he identified the sections that were breached, and he explained that he was removed from the call group. Those sections require Woodland Heights to provide notice prior to terminating the agreement, and that the agreement may be terminated only for specified circumstances, including a material breach of the agreement.

As we explained earlier, Buschemeyer called Woodland Heights to ascertain the January 2016 schedule, and was told that he "was not on the call schedule any longer and had been replaced with Dr. Shawn Todd." He testified in his affidavit that Woodland Heights failed to follow the termination procedures outlined in Section I and Section III of the attached agreement, and that it breached the agreement by not allowing him to participate in the call group. *Cf. Columbia Valley Healthcare Sys., L.P. v. Pisharodi*, No. 13-16-00613-CV, 2017 WL 4416334, at *3 (Tex. App.—Corpus Christi Oct. 5, 2017, no pet. h.) (mem. op.) (holding doctor failed to satisfy burden for breach of contract under second step of TCPA when he merely asserted contract existed between him and hospital, but failed to attach copy of contract or cite to any section of agreement to explain how hospital breached agreement).

Accordingly, we hold that Buschemeyer provided enough evidence at this stage of the litigation to show the factual basis in the record to support his breach of contract cause of action against Woodland Heights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

**Tortious Interference with Existing Patients– Memorial and Woodland Heights**

Buschemeyer alleges that he had patients receiving medical care at Woodland Heights and Memorial, that the hospitals knew or had reason to know of the relationships, but nevertheless willfully interfered with them by failing to contact him at their request. Buschemeyer testified in his affidavit that Memorial and Woodland Heights interfered with his existing patients and ordered other doctors to provide medical services to them. Consequently, he states that he lost the

remuneration he would have earned had he personally treated those patients. He concluded that there may be other similar cases, but he does not have complete access to this information without discovery.

We are unaware of any cases specifically recognizing a cause of action for tortious interference with a physician-patient relationship against a hospital. Nevertheless, in his response to Appellants' motion to dismiss, Buschemeyer contends that the elements for this cause of action are the same as tortious interference with an existing contract. On the other hand, in his appellate brief, Buschemeyer argues that the elements are the same as tortious interference with prospective business relationships. For example, in his brief, Buschemeyer cites authority that "[t]ortious interference with business or prospective contractual relations concerns . . . a continuing business relationship not amounting to a formal contract." *Heil-Quaker Corp. v. Mischer Corp.*, 863 S.W.2d 210, 214 (Tex. App.—Houston [14th Dist.] 1993), *judgment set aside*, 877 S.W.2d 300 (Tex. 1994). The elements for tortious interference with a continuing business relationship not amounting to a formal contract are the same as those for interference with prospective contractual relations: (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) that an independently tortious or wrongful act by the defendants prevented the relationship from occurring; (3) the defendants either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual harm or damages. *See Astoria Indus. of Iowa, Inc. v. SNF, Inc.,* 223 S.W.3d 616, 632-633 & n.54 (Tex. App.—Fort Worth 2007, pet. denied). Buschemeyer alleges that his relationships with his patients are a continuing business relationship not reduced to a formal contract, and that Woodland Heights and Memorial interfered with them when they failed to contact him at his patients' request.

A physician-patient relationship is created when professional medical services are offered and they are accepted by another. *Stutes v. Samuelson*, 180 S.W.3d 750, 753 (Tex. App.—Fort Worth 2005, pet. denied). The relationship is generally viewed as a voluntary and contractual one, which may be implied or express. *Id.* However, creation of the physician-patient relationship does not require the formalities of a contract. *Estrada v. Mijares*, 407 S.W.3d 803, 807 (Tex. App.—El Paso 2013, no pet.). If there is no prior relationship between the physician

and the patient, there must be some affirmative action on the part of the physician to treat the patient to create such a relationship. *Id.*

Even if Texas law recognizes this cause of action, a question we do not reach, to the extent that this is a tortious interference with continuing business relationship case, the tort requires an independently tortious act. *See Astoria Indus. of Iowa*, 223 S.W.3d at 632-633 & n.54. In his brief, Appellant does not address this element. Buschemeyer failed to show that either hospital had a duty to contact him, or that their authorization of other on-call or on-duty physicians to treat his patients is an independently tortious act.

Moreover, to the extent that the claim is characterized as a tortious interference claim with an existing contract, Buschemeyer has not provided enough evidence to show that the hospitals acted willfully or intentionally to interfere with his care for his patients. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77-78 (requiring willful and intentional act of interference with the contract). The intent required to prove interference requires evidence that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it. *See Sw. Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). The defendant must intend to interfere—cause a breach of the contract—not just intend to do the particular acts that were done. *See Fluor Enterprises, Inc. v. Conex Intern. Corp.*, 273 S.W.3d 426, 443 (Tex. App.—Beaumont 2008, pet. denied).

The hospitals provided unrebutted evidence that they attempted to contact Buschemeyer, that there were other reasons that they did not contact him, or that no medical services were performed, thereby causing him no harm. Specifically, Buschemeyer provided affidavits from two of his patients, their wives, and the wife of a third patient, who claimed that the hospitals failed to contact him at their request. One patient, J.B. Goodwin, claims that he requested that Memorial contact Buschemeyer, but it failed to do so. This occurred in April 2015, which is prior to the events leading to his removal from the call group. Memorial also provided evidence that it attempted to contact Dr. Buschemeyer twice that day for his treatment. After Buschemeyer was removed from the call group, the remaining two patients, Jack Gibson and Granville Wayne Foster, who were patients at Woodland Heights, also allege in their affidavits that the hospital failed to contact Buschemeyer at their request.[8] Foster was admitted for severe burns due to an accident and was quickly flown to a burn hospital, and no immediate urological treatment was

---

[8] Granville Wayne Foster did not present an affidavit. Rather, his wife Sandra Foster, presented her own affidavit as a witness describing her observations.

18

required due to the severity of his other injuries. As to Gibson, Woodland Heights provided evidence that Buschemeyer saw him the day following his request and determined that no urological treatment was needed.

Accordingly, the trial court erred when it failed to dismiss Buschemeyer's claims for tortious interference with existing patients against Memorial and Woodland Heights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)-(c).

**Damages**

The goal in measuring damages for a breach of contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Parkway Dental Assocs., PA v. Ho & Huang Props., LP*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The normal measure of damages in a breach of contract case is the expectancy or benefit-of-the-bargain measure. *Id.* The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Id.* The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed. *See Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990). The same is true for tortious interference with prospective business relationships. *See Coinmach Corp.*, 417 S.W.3d at 923.

The Texas Supreme Court has not required that the plaintiff establish a specific amount of damages in the TCPA analysis.[9] *See Lipsky*, 460 S.W.3d at 592-93. Under the TCPA, Buschemeyer only had to adduce evidence supporting a rational inference as to the existence of damages, not their amount or constituent parts. *See Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding plaintiff not required to show amount of damages in a tortious interference case during TCPA portion of proceedings).

Appellants rely on *Lipsky* as support that Buschemeyer failed to sufficiently satisfy his burden under the TCPA as to damages. *See Lipsky*, 460 S.W.3d at 592-93. In *Lipsky*, the nonmovant supported its business disparagement claim with evidence that it suffered "direct

---

[9] Indeed, the court recently denied a petition for review in a case where there was no mention of a specific amount of damages. *See Apple Tree Cafe Touring, Inc. v. Levatino*, No. 05-16-01380-CV, 2017 WL 3304641, at *6 (Tex. App.—Dallas Aug. 3, 2017, pet. denied) (mem. op.).

pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill in the communities in which it operates . . . in excess of three million dollars," without providing any further detail. *Id.* at 592. The court concluded that this testimony was not clear and specific evidence of damages, because "[g]eneral averments of direct economic losses and lost profits, without more," are insufficient to "satisfy the minimum requirements of the TCPA." *Id.* at 593. The testimony was "devoid of any specific facts illustrating how Lipsky's alleged remarks . . . actually caused such losses." *Id.* In other words, a bare recitation of the type and estimated amount of damages, without supporting facts showing that he suffered damages and how the defendant caused them is insufficient under the TCPA. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 197 (Tex. App.—Fort Worth 2017, pet. filed).

With the exception of his claim against the hospitals for failing to contact him at his patients' request, all of Buschemeyer's damages for all of his causes of action are the same losses and measure of damages. The contracts show that Buschemeyer received $500.00 per day for days worked as part of the call group at Woodland Heights, and $958.90 per day at Memorial. The total compensation under the contracts is $1,458.90 per day total for being on call at both hospitals. He explained that as a result of Price's interference and Woodland Heights' breach of contract, he lost this pay. Buschemeyer explained that these losses totaled $150,000.00 in annual revenue after being removed from the call group for both hospitals. With respect to the loss of future patients, Buschemeyer explained that before he was removed from the call group, at least 75% of the patients he treated at the hospitals as part of the call group would eventually become his patients as part of his medical practice, which was a great source of new patients and business revenue that he lost. Specifically, he alleged that he lost $250,000.00 in revenue from no longer having the benefit of new patients, which naturally resulted from being part of the call group. He explained further that after his removal from the call group, because of the lost revenue, he suffered other concrete consequential losses. For example, he explained that he was forced to take out a $100,000.00 loan, sell his personal family farm, and spend his savings to help pay personal and business bills. Ultimately, he explained Appellants' actions forced him to close his medical practice and take a job in the Woodlands, Texas.

While Buschemeyer may be required to prove the amount of damages with more specificity at trial, he has satisfied his burden here under the TCPA. It is not fatal that he testified

20

as to lost revenues, as opposed to lost profits, at this stage of the proceeding.[10]  *See Lipsky*, 460 S.W.3d at 592-93; *Deuell*, 508 S.W.3d at 689.  As we have stated, he need show only how Appellants caused his damages, and that he in fact suffered damages, not the specific amounts of losses with exactitude.  *See Lipsky*, 460 S.W.3d at 592-93; *Deuell*, 508 S.W.3d at 689.  He explained how Appellants' conduct in removing him from the call group caused his losses, and established that he suffered economic losses as a result, which ultimately required him to take out a loan, sell his personal assets, use his personal savings to pay his debts, and finally, wind up his practice in Lufkin.

In summary, the trial court correctly found that Buschemeyer met his burden under the TCPA to establish that he suffered damages, and that it was caused by Appellants' conduct.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

**Injunction and Malice Claims**

Buschemeyer included an application for temporary and permanent injunctions in his petition, but the injunction remedy is moot since he has relocated his practice.  *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002) (stating controversy ceasing to exist because issues presented are no longer "live" renders issue moot); *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 847 (Tex. App.—Austin 2002, pet. denied) (stating issue moot when allegedly wrongful behavior has passed and cannot be expected to recur).  In addition, he did not provide evidence or brief the appropriateness of this remedy.

Buschemeyer also alleged that Price acted with malice, but this is not its own independent cause of action.  Rather, this is a predicate to authorize the remedy of exemplary damages.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(2) (West 2015).  "Malice" means a specific intent by the defendant to cause substantial injury or harm to the claimant.  *Id.* § 41.001(7) (West Supp. 2017).  Given Price's alleged conduct that we described above to intentionally ruin Buschemeyer's practice in the Lufkin area, we hold that he met the prima facie case requirement under the TCPA to show the factual basis supporting a potential award for exemplary damages.

---

[10] *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 279–80 (Tex. 2015) (quoting *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938)) ("[C]ourts draw a distinction between uncertainty merely as to the amount and uncertainty as to the fact of legal damages . . . [, and] that uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery.  A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages.").

**Attorney's Fees**

The TCPA requires the trial court to award court costs, reasonable attorney's fees, and other expenses to the movant upon dismissal of "a legal action" under the Act.[11] *Id.* § 27.009(a)(1) (West 2015). The TCPA defines "legal action" as, among other things, a cause of action. *See id.* § 27.001(6). When the appellate court holds that the plaintiff failed to discharge his burden to prove a prima facie case under the TCPA as to some of his causes of action, but that he successfully met his burden on other causes of action, it must remand the case to the trial court for a determination of the proper amount of fees, costs, and expenses to award the movant. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441-42 (Tex. 2017); *Serafine v. Blunt*, 466 S.W.3d 352, 364 (Tex. App.—Austin 2015, no pet.).

The trial court did not award Appellants any fees because it found that the TCPA did not apply to Buschemeyer's claims and that, in any event, he met his burden under the TCPA to establish a prima facie case on all of his causes of action. We have held that Buschemeyer failed to meet his burden to prove, by clear and specific evidence, a prima facie case on his due process and tortious interference with existing patients claims against Memorial and Woodland Heights, along with his intentional infliction of emotional distress claim against Price. Accordingly, we remand the case so that the trial court may exercise its discretion and determine the proper amount of fees, costs, and expenses to award to Appellants. *See Rosenthal*, 529 S.W.3d at 441-42; *Serafine*, 466 S.W.3d at 364.

Appellants' second issue is sustained in part and overruled in part.

## DISPOSITION

We have sustained Appellants' first issue and portions of their second issue. Accordingly, we *reverse* the portion of the trial court's order finding that Buschemeyer's claims are not governed by the TCPA. We also *reverse* the portion of the trial court's order concluding that Buschemeyer established a prima facie case by clear and specific evidence for each essential element of his due process and tortious interference with existing patients' claims against Woodland Heights and Memorial, along with his intentional infliction of emotional distress claim against Price, and we *render* judgment *dismissing* those claims. Because we have found that Buschemeyer failed to meet his TCPA burden on all claims against Memorial, we *render*

---

[11] The TCPA also authorizes the court with discretion to order sanctions against the party bringing the action to deter future similar actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(2).

judgment dismissing Memorial from this lawsuit. The remaining portion of the trial court's order finding that Buschemeyer met his TCPA burden to establish his other claims against Price and Woodland Heights is *affirmed*. We *remand* the case for a determination of attorney's fees to be awarded to Appellants, and for further proceedings consistent with this opinion.

**BRIAN HOYLE**
Justice

Opinion delivered March 29, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 29, 2018**

**NO. 12-17-00180-CV**

**DAVID T. PRICE M.D., IND., DAVID T. PRICE, M.D., P.A., D/B/A EAST TEXAS UROLOGY SPECIALISTS; PINEY WOODS HEALTHCARE SYSTEM, L.P., D/B/A WOODLAND HEIGHTS MEDICAL CENTER, AND CHI ST. LUKE'S HEALTH MEMORIAL LUFKIN, F/K/A MEMORIAL HEALTH SYSTEM OF EAST TEXAS,**
Appellant
V.
**W. COOPER BUSCHEMEYER, III, INDIVIDUALLY AND W. COOPER BUSCHEMEYER, III, M.D., P.A.,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. CV-00848-16-12)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that (1) the portion of the trial court's order finding that **W. COOPER BUSCHEMEYER, III, INDIVIDUALLY AND W. COOPER BUSCHEMEYER, III, M.D., P.A.**'s ("Buschemeyer") claims are not governed by the TCPA be **reversed,** and (2) the portion of the trial court's order concluding that Buschemeyer established a prima facie case by clear and specific evidence for each essential element of his due process and tortious interference with

existing patients claims against **PINEY WOODS HEALTHCARE SYSTEM, L.P., D/B/A WOODLAND HEIGHTS MEDICAL CENTER, AND CHI ST. LUKE'S HEALTH MEMORIAL LUFKIN, F/K/A MEMORIAL HEALTH SYSTEM OF EAST TEXAS** ("Memorial and Woodland Heights"), along with his intentional infliction of emotional distress claim against **DAVID T. PRICE M.D., IND., DAVID T. PRICE, M.D., P.A., D/B/A EAST TEXAS UROLOGY SPECIALISTS** ("Price") be **reversed**; and we **render** judgment **dismissing** those claims. It is further ORDERED, ADJUDGED and DECREED that judgment is **rendered dismissing** Memorial from this lawsuit. The remaining portion of the trial court's order finding that Buschemeyer met his TCPA burden to establish his other claims against Price and Woodland Heights is **affirmed**. It is further ORDERED, ADJUDGED and DECREED that this case is **remanded** for a determination of attorney's fees to be awarded to Appellants, and for further proceedings consistent with this opinion.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*